Filed 9/18/20  P. v. Chilcott CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>KURT LORIN CHILCOTT,<br><br>Defendant and Appellant. | C085964<br><br>(Super. Ct. No. 16FE017710) |

Defendant Kurt Chilcott repeatedly molested the victim, Annabelle, from when she was eight years old until she was 10 years old.  Convicted by jury of numerous counts of molestation and sentenced to long indeterminate and determinate terms in state prison, defendant appeals.

Defendant now contends:  (1) the prosecutor committed misconduct by asking several "were they lying" questions during her cross-examination of defendant and, in the alternative, defense counsel provided ineffective assistance of counsel by failing to object; (2) a detective's opinion about a witness's veracity was improperly admitted and, in the alternative, defense counsel provided ineffective assistance of counsel by failing to

1

object; (3) the trial court abused its discretion and violated defendant's fair trial rights by denying a defense motion for mistrial after an expert testified that studies indicate children rarely make false sexual molestation allegations; (4) the trial court improperly admitted evidence concerning the profile of a sexual molester when a prosecution expert testified concerning what child molesters do and, in the alternative, defense counsel provided ineffective assistance of counsel by failing to object; (5) defense counsel provided ineffective assistance of counsel by agreeing not to question a defense expert witness about whether the methods used to interview the victim were suggestive; (6) the trial court prejudicially violated defendant's federal due process rights by instructing that a violation of Penal Code section 288.7, subdivision (b)[1] [oral copulation or sexual penetration with a child who is 10 years of age or younger] is a general intent crime; (7) the cumulative prejudice of the asserted errors and ineffective assistance requires reversal even if they do not individually require reversal; (8) the sentence must be vacated and the matter remanded to the trial court for resentencing because the trial court did not state its reasons for imposing consecutive sentences and, in the alternative, defense counsel provided ineffective assistance of counsel by failing to object; (9) defense counsel's deficiencies, considered cumulatively, were prejudicial; (10) the trial court erred by not staying the sentence on count twenty [misdemeanor annoying or molesting a child, section 647.6, subd. (a)(1)] under section 654 because defendant told the victim to wear stretchy pants and no bra (the basis of the annoying and molesting conviction) to facilitate his commission of the other acts for which he was convicted; and (11) the abstract of judgment must be corrected to reflect the trial court's oral pronouncement of a $2,000 restitution fine and accompanying $2,000 parole revocation fine rather than the $10,000 fines listed on the abstract of judgment.

---

[1] Undesignated statutory references are to the Penal Code.

We conclude:  (1) defendant forfeited appellate review of alleged prosecutorial misconduct by failing to object in the trial court, and defense counsel did not provide ineffective assistance of counsel because the prosecutor's conduct was harmless; (2) defendant forfeited appellate review of the detective's opinion about the witness's veracity, and defense counsel did not provide ineffective assistance of counsel because not objecting was part of a reasonable defense strategy; (3) the trial court did not abuse its discretion in denying the motion for mistrial; (4) defendant forfeited appellate review of the profile-evidence issue, and defense counsel did not provide ineffective assistance of counsel by failing to object; (5) defense counsel did not provide ineffective assistance of counsel because defense counsel asked the defense expert generally about suggestiveness and posed hypotheticals mirroring the methods used in this case in interviews of the victim to get the expert's opinion concerning whether they were suggestive; (6) any error in instructing the jury that a violation of section 288.7, subdivision (b) is a general intent crime was harmless beyond a reasonable doubt under the circumstances; (7) there is no cumulative prejudice warranting reversal; (8) defendant forfeited appellate review of the trial court's failure to state reasons for imposing consecutive sentences by failing to object, and defense counsel did not provide ineffective assistance of counsel; (9) there is no cumulative prejudice in connection with defendant's claims of ineffective assistance of counsel; (10) the trial court properly concluded that the acts constituting annoying or molesting a child did not facilitate defendant's commission of the other offenses; and (11) the abstract of judgment must be corrected to conform to the oral pronouncement of judgment.

We will affirm the judgment and direct the trial court to correct the abstract of judgment.

## BACKGROUND

Annabelle called defendant Grandpa, but he is not her biological grandfather. Annabelle's mother is married to defendant's stepson, who is not Annabelle's father.

3

During the time relevant to this case, Annabelle was eight to 10 years old. She lived in an apartment within walking distance of defendant's house. She visited defendant a few times each month and sometimes stayed overnight. One of the bedrooms at defendant's home had Three Stooges memorabilia, so Annabelle called that room the "Stooge Room."

Annabelle testified that, on her visits to defendant's home, defendant molested her in the Stooge Room, in the bathroom, and in the garage. However, she also testified that nothing happened in the bathroom. Annabelle further testified defendant molested her in his car during outings and at her apartment. The contentions on appeal do not require recitation of the details concerning the molestations.

Every time defendant molested Annabelle, he told her not to tell anyone. When Annabelle was 10 years old, Annabelle's aunt asked Annabelle about defendant's conduct toward her. Annabelle told her aunt and her mother that defendant had been touching her butt, kissing her on the lips, and putting his hands down her pants, and that defendant had told Annabelle she would not be able to use the computer or watch television anymore if she told anyone. Annabelle's aunt reported the conduct to law enforcement.

Annabelle was interviewed by a sheriff's deputy and by a forensic interview specialist at the Special Assault Forensic Evaluation center, and Annabelle reported defendant's molestations. Also, a sheriff's deputy helped Annabelle's mother make a pretext call to defendant. In the call, Annabelle's mother said defendant had touched Annabelle's breasts and "private areas" and asked if he would get counseling. He answered, "[Y]es, absolutely." Defendant continued: "I've confessed everything to – to God and he's forgiven me and . . . I'm never gonna be the same. That's – that's the best thing in the world." Defendant said he felt guilty, but he refused to confess anything specific to Annabelle's mother over the phone. Annabelle's mother said he had "broke

4

the ultimate trust," and he answered, "I understand that. I understand that but I can't do anything about the past. All I can do is the future."

The prosecution introduced evidence of defendant's prior bad acts. Regina, who is 36 years old, testified that defendant molested her when she was nine or 10 years old. Defendant was tried in Sonoma County on charges relating to Regina, but the jury could not reach a verdict. Eventually, defendant pled guilty to annoying or molesting a child with respect to three young girls, including Regina, in exchange for dismissal of felony charges.

As for other evidence presented at trial, the prosecution, through psychologist Blake Carmichael, introduced expert testimony concerning children's reactions to sexual abuse. Defendant testified and denied all of the conduct alleged against him. And the defense, through psychologist William O'Donohue, introduced expert testimony concerning children's reactions to sexual abuse and concerning suggestibility in forensic interviews. Additional details concerning evidence introduced at trial are recounted in the discussion of defendant's appellate contentions.

The jury convicted defendant of seven counts of oral copulation or sexual penetration with a child who is 10 years of age or younger (§ 288.7, subd. (b)), 10 counts of lewd acts with a child under the age of 14 years (§ 288, subd. (a)), and one count of misdemeanor annoying or molesting a child under the age of 18 years (§ 647.6, subd. (a)(1)). The jury acquitted defendant on two counts of oral copulation or sexual penetration with a child who is 10 years of age or younger. Those two counts were alleged to have occurred in the bathroom.

The trial court sentenced defendant to an indeterminate term of 15 years to life for each of the seven counts of oral copulation or sexual penetration with a child who is 10 years of age or younger (§ 288.7, subd. (b)), all to be served consecutively, for a total indeterminate term of 105 years to life. The trial court also sentenced defendant to a determinate term of eight years for a lewd act with a child under the age of 14 years

(§ 288, subd. (a)), with a consecutive two-year determinate term (one-third the middle term) for each of the remaining nine counts of lewd acts with a child under the age of 14 years (§ 288, subd. (a)).  Finally, the trial court sentenced defendant to a consecutive term of eight months for misdemeanor annoying or molesting a child under the age of 18 years (§ 647.6, subd. (a)(1)), for a total determinate term of 26 years, eight months.

## DISCUSSION

### I

The prosecutor asked several "were they lying" questions during her cross-examination of defendant.  Defendant's trial counsel did not object to the questions at trial, but now defendant contends the questions constituted prosecutorial misconduct.  Defendant also contends that, if trial counsel forfeited the issue by failing to raise it in the trial court, defendant's right to counsel was violated by ineffective assistance of counsel.

During the prosecutor's cross-examination of defendant, she asked defendant about prior-act allegations and allegations of the victim in this case.  The prosecutor asked defendant several times whether Annabelle was making up the allegations against defendant.  She asked whether Annabelle's allegations were a figment of Annabelle's imagination and whether Annabelle was lying.  Concerning allegations of prior acts on other victims, the prosecutor asked whether the victims were lying.  Defendant repeatedly answered that the victims were lying.  Defendant also claims the prosecutor committed misconduct because some of the "were they lying" questions were about evidence not presented to the jury.  Specifically, with respect to individuals named Denise and Tina who did not testify, the prosecution and defense entered into a stipulation that defendant pleaded guilty to misdemeanor annoying a child charges (§ 647.6) in exchange for dismissal of felony child molestation charges (§ 288, subd. (a)), but the stipulation did not identify specific acts.  Nevertheless, the prosecution asked defendant "were they lying" questions about specific acts relating to Denise and Tina.

6

"The applicable federal and state standards regarding prosecutorial misconduct are well established. ' "A prosecutor's . . . intemperate behavior violates the federal Constitution when it comprises a pattern of conduct 'so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process.' " ' [Citations.] Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves ' " 'the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.' " ' [Citation.] . . . [W]hen the claim focuses upon comments made by the prosecutor before the jury, the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion. [Citation.]" (*People v. Samayoa* (1997) 15 Cal.4th 795, 841.)

"To preserve a misconduct claim for review on appeal, a defendant must make a timely objection and, unless an admonition would not have cured the harm, ask the trial court to admonish the jury to disregard the prosecutor's improper remarks or conduct." (*People v. Martinez* (2010) 47 Cal.4th 911, 956.) Here, defendant's trial counsel did not object to the prosecutor's "were they lying" questions, except for an objection that the question had been asked and answered. Therefore, appellate review of the prosecutorial misconduct issue is forfeited. (*People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 318.) Nevertheless, we must address the issue because defendant argues his trial counsel provided ineffective assistance by failing to raise the prosecutorial misconduct issue in the trial court.

To demonstrate ineffective assistance of counsel, a defendant must show two things: deficient representation and prejudice resulting from the deficient representation. The standard for deficiency is that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. The standard for prejudice is that there is a reasonable probability the defendant would have obtained a better result absent the deficiency. (*People v. Avena* (1996) 13 Cal.4th 394, 418 (*Avena*);

7

*Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 693-694 [80 L.Ed.2d 674, 693-694, 697-698].)  If there is no showing of prejudice, we need not examine counsel's performance.  (*Strickland,* at p. 697.)  We will proceed directly to a discussion of prejudice, because it is absent here.

"Were they lying" questions may be appropriate under some circumstances, such as when a defendant, as a percipient witness, might be able to provide insight on whether a witness is intentionally lying or merely mistaken.  (*People v. Chatman* (2006) 38 Cal.4th 344, 382.)  However, when the questions are merely argumentative or designed to elicit irrelevant or speculative testimony, the "were they lying" questions are improper.  (*Id*. at p. 384.)  Federal courts have found them improper because they invade the province of the jury to make credibility determinations.  (See *United States v. Boyd* (D.C. Cir. 1995) 54 F.3d 868, 871.)  Here, although it appears that most, if not all, of the "were they lying" questions were improper, we need not analyze each individual question because they were not prejudicial.

The prosecutor's conduct and defense counsel's failure to object to the conduct were harmless.  The limited questions did not comprise a pattern of conduct so egregious that it denied defendant due process.  (*People v. Samayoa, supra,* 15 Cal.4th at p. 841.)  And it is not probable the jury would have reached a result more favorable to defendant had defense counsel objected to the prosecutor's conduct.  (*People v. Zambrano* (2004) 124 Cal.App.4th 228, 243.)

Defendant argues the questions were prejudicial because they "implicated [defendant's] specific right to have the jury resolve credibility issues and his right to confront . . . Denise and Tina's evidence against him" and "chipped away at [defendant's] defense by asking him to repudiate it."  Defendant also argues the prosecutor's questions were prejudicial because his defense was that Annabelle was subject to suggestive questioning in the interviews which shaped what she believed about

what defendant had done.  He asserts "the defense stopped short of saying Annabelle was lying . . . ."

These arguments fall short of establishing prejudice.  They do not suggest the jurors were misled in their duty because of the "were they lying" questions.  And the questions did not prevent the jury from considering the defense that suggestive questioning had shaped Annabelle's account of what defendant had done to her.

Defendant denied all allegations of improper touching, both of Annabelle and the prior victims.  Therefore, the jury was left to decide which parties were credible.  That the prosecutor asked defendant whether the victims were lying added little to the proceedings.  Even if the prosecutor had not expressly posed the question of whether the victims were lying, the jury would have had the same task of determining whether the victims were lying or were otherwise not credible.  There is no indication the questions improperly influenced the jury in making those determinations.

Because the "were they lying" questions were harmless, defendant's ineffective-assistance-of-counsel claim lacks merit.

II

Before trial, defendant moved to exclude any opinion by police officers, among others, concerning the veracity of the victims, both past and present.  The prosecution agreed that "questioning any witness about believing the victim" would be improper.  The trial court did not expressly rule on the motion, but replied "[a]ll right" to the prosecutor's agreement.

During trial, a transcript of a 1991 interrogation of defendant by Detective George Collord concerning allegations made by Regina was read to the jury because the tape of the interview had been lost.  The transcript of the interrogation was read to the jury pursuant to an agreement between the prosecutor and the defense, with defense counsel expressing a desire that the transcript be admitted in evidence.

9

In the interrogation, Detective Collord asked about Regina's allegations that defendant had abused her. After defendant had denied any abuse, Detective Collord told defendant he thought defendant had made a "mistake" and that defendant touched Regina, "a one-time error in judgment" or that defendant touched Regina by accident. Detective Collord continued, "[I]t's something that happens, because we're all human, we make mistakes, and [Regina] is extremely believable. She's very believable. And she's not lying about what happened. Y'know, I've been interviewing kids for years. I've been interviewing people that have gotten themselves in these situations. And it, it's something that, that, we do things that, that, ah, and I've done the same thing, done something that I instantly regret . . . ." Defendant did not object to introduction of this part of the transcript.

Defendant now contends Detective Collord's opinion about Regina's veracity was improperly admitted and, in the alternative, defense counsel provided ineffective assistance by failing to object to admission of the opinion.

Generally, a witness's opinion about whether another person is telling the truth is inadmissible because the jury is as capable as the witness to discern truthfulness. (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 82.) But failure to object to such testimony forfeits review of the issue on appeal. (*Id*. at pp. 81-82.)

Here, review of the issue was forfeited. Defendant moved to exclude testimony about a witness's veracity before trial, but defense counsel agreed to admission of the transcript during the trial. In any event, the transcript did not constitute testimony about Regina's veracity. As the jury could discern, Detective Collord's statements in the transcript about Regina's veracity were a part of a strategy to get defendant to admit the allegations. They were not made for the benefit of the jury's determination of Regina's veracity.

However, because review of the issue was forfeited, we move on to defendant's alternative argument that defense counsel provided ineffective assistance of counsel by

10

failing to object to admission of Detective Collord's statements about Regina's veracity. As noted above, to demonstrate ineffective assistance of counsel, a defendant must show deficient representation and prejudice resulting from the deficient representation. (*Avena, supra,* 13 Cal.4th at p. 418.) Defendant's argument fails to establish defense counsel's representation was deficient; therefore, we need not discuss his argument concerning prejudice.

The record shows that defense counsel's agreement to admission of the transcript was part of a defense strategy. In the two-hour interview, Detective Collord used various strategies, even suggesting several innocent or less-serious scenarios, to get defendant to admit to the allegations. Defendant insisted he could not remember doing anything to Regina. He finally conceded something may have happened, but he did not confess to any specific conduct.

In closing argument, defense counsel highlighted Detective Collord's failure to get defendant to confess to any specific conduct with Regina. Defense counsel reminded the jury that a jury in the case involving Regina failed to reach a verdict even though they had the interrogation of defendant and the testimony of Regina. And defense counsel asked the jury to consider whether the interrogation was coercive and pointed out for the jury the strategies Detective Collord used to try to get defendant to confess. Although defense counsel did not mention Detective Collord's statement concerning Regina's veracity, a major theme of defense counsel's closing argument was that Detective Collord used coercive interrogation strategies in trying to get defendant to confess, and defendant never did. Defense counsel called Detective Collord's strategies "a psychological rubber hose." This record reveals that defense counsel's strategy was to have the jury hear the entire interrogation by Detective Collord concerning Regina and to use that interrogation to show that defendant did not molest Regina.

"In assessing claims of ineffective assistance of trial counsel, we consider whether counsel's representation fell below an objective standard of reasonableness under

11

prevailing professional norms . . . . [Citations.] A reviewing court will indulge in a presumption that counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy. Defendant thus bears the burden of establishing constitutionally inadequate assistance of counsel. [Citations.]" (*People v. Carter* (2003) 30 Cal.4th 1166, 1211.)

Here, we cannot say that defense counsel's strategy fell below an objective standard of reasonableness. Detective Collord's statement to defendant that the detective believed Regina was truthful was part of the pressure-filled interrogation. Defendant's argument on appeal does not overcome the presumption that agreeing to have all of Detective Collard's interrogation read to the jury and then attacking that interrogation as heavy-handed, "a psychological rubber hose," in closing argument constituted constitutionally deficient representation. Therefore, defendant's claim of ineffective assistance of counsel is without merit.

### III

Defendant next contends the trial court abused its discretion and violated his fair trial rights by denying a defense motion for mistrial after an expert testified that studies indicate children rarely make false sexual molestation allegations.

### A

Before trial, defendant moved to exclude all testimony concerning percentages of false accusations. The motion sought exclusion of "so-called scientific studies regarding the allegedly small percentage of false allegations of child molest" and asserted that "prosecution experts have a history of blurting out these figures, even in matters w[h]ere the prosecution has instructed him not to do so. It is the defense request that the prosecution expert be instructed by the court not to mention the studies or the percentages . . . ."

12

In a pretrial hearing, the prosecutor said: "I will admonish [the expert] not to discuss percentages given to false complaints . . . ." Defense counsel added that a different expert not involved in this case commonly "blurts that stuff out nonstop, even when told not to." Defense counsel continued that the other expert also "tried to do things like, well, very low, hardly ever happens, as another way of getting the same thing in." The trial court responded, "All right. I'm comfortable with the stipulation."

Dr. Blake Carmichael, a psychologist, testified for the prosecution concerning child sexual abuse and how a child reacts to abuse, such as delayed disclosure. During cross-examination, defense counsel asked about research on different topics relating to victims of child molestation. Dr. Carmichael testified: "I'm not aware of any test given that can say if a child has been abused or not, otherwise, we would use it, and we wouldn't need jur[ies]."

The following exchange took place during cross-examination:

"Q. Now, the concept of delayed disclosure, if somebody tells a false allegation they could say that it's happening right now, I mean, I'm being touched this moment, or they would have to say it happened sometime in the past, a week ago, a month ago, a year ago.

"Those are the only two choices, correct?

"A. I think what -- so a delayed disclosure is delaying telling about something that's actually happened. That's what the research has been on, on delayed disclosure, is kids who have been found to be sexually abused and the delays when they tell about it.

"What you're referring to is a false allegation --

"Q. Correct.

"A. -- which is a separate body of literature.

"Q. Okay.

"A. Which indicates that false allegations made by children are rare.

13

"And so it's a different field of study and a different population of kids, and so comparing them doesn't -- doesn't work."

Later, the following exchange took place:

"Q.    In a false allegation case a child could give inconsistent statements, also, true?

"A.    If someone's lying about something that happened to them, they can tell a different story.  Again, what we find in the research is that kids are less likely to lie about certain things, which sexual abuse is one of them, and so it depends on what they're talking about or reporting."

Defense counsel did not move to strike any of Dr. Carmichael's statements.

At the next break, defense counsel moved for mistrial, saying, "This expert witness was told not to make comments like, false allegations are rare.  We went over that and over and over it."  The trial court and the prosecutor recalled that the exclusion of evidence related to statistics, and the trial court denied the motion for mistrial.

Defendant's own expert witness, Dr. William O'Donohue, testified that it is rare for a child to intentionally lie about sexual molestation.  But the focus of Dr. O'Donohue's testimony was on the effects of suggestive interview techniques on a child's veracity.

The trial court instructed the jury that it was to decide what the facts were and judge the credibility of witnesses.  The trial court instructed the jury that Dr. Carmichael's testimony was "not evidence that the defendant committed any of the crimes charged against him.  [¶]  You may consider this evidence only in deciding whether or not [Annabelle's] conduct was not inconsistent with the conduct of someone who has been molested, and in evaluating the credibility of her testimony."

B

Concerning appellate review after denial of a motion for mistrial, the California Supreme Court has stated:  "We review the denial of a motion for mistrial under the

14

deferential abuse of discretion standard. [Citations.] 'A motion for mistrial is directed to the sound discretion of the trial court. We have explained that "[a] mistrial should be granted if the court is apprised of prejudice that it judges incurable by admonition or instruction. [Citation.] Whether a particular incident is incurably prejudicial is by its nature a speculative matter, and the trial court is vested with considerable discretion in ruling on mistrial motions." ' [Citations.]" (*People v. Cox* (2003) 30 Cal.4th 916, 953, disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

Expert testimony concerning research on the rate of false child molestation allegations is inadmissible at trial because it invites the jury to presume the defendant is guilty based on statistical probabilities rather than deciding guilt based on the evidence properly introduced. *(People v. Julian* (2019) 34 Cal.App.5th 878, 886 (*Julian*).) In *Julian*, the prosecution's expert psychologist testified at length concerning the percentage of false allegations made by children in 12 studies. (*Id*. at p. 883.) He said studies have shown that percentages of false allegations are low. He specifically cited a Denver Department of Social Services study that found only 2.5 percent of sexual abuse allegations were false allegations out of 551 cases. (*Id*. at p. 883.) He also cited a study of 798 cases in which not a single false allegation was made by a child. (*Id*. at p. 884.) The defense counsel in *Julian* did not object to the expert's statistical evidence. (*Id*. at p. 887.)

The Court of Appeal determined that defense counsel had provided ineffective assistance of counsel by not objecting to the statistical evidence, thus depriving the defendant of a fair trial. The court noted the weak nature of the evidence of molestation and strong defense evidence in which the defendant denied any touching and the victim's siblings could not corroborate the victim's testimony even though they were supposedly present when the molestation occurred. (*Julian, supra,* 34 Cal.App.5th at p. 888.) The court concluded: "[The expert's] statistical evidence tipped the scales in favor of the People based on statistical studies that were irrelevant to the issue of Julian's guilt or

15

innocence. It distracted the jury from its duty to decide the properly admitted evidence. [Citation.] Such evidence may not be prejudicial where it occurs in a slight passing reference by the expert. But here the jury was bombarded with it." (*Ibid.*)

Unlike the wide-ranging statistical evidence in *Julian*, this case included only a slight passing reference to the fact that false child molestation allegations are rare. Also, the focus of the defense was on suggestive investigative questioning, which mostly avoided the question of whether Annabelle was lying. Under these circumstances, the trial court did not abuse its discretion in determining that the testimony was not incurably prejudicial, and therefore defendant's fair trial rights were not violated.

IV

Defendant further claims the trial court improperly admitted evidence concerning the profile of a sexual molester when Dr. Carmichael testified about what child molesters do. In the alternative, defendant argues defense counsel provided ineffective assistance of counsel by failing to preserve appellate review of the issue.

Before trial, defendant moved to exclude, among other things, profile evidence and expert opinion that Annabelle was a victim of sexual molestation. In the hearing on the pretrial motions, the prosecutor said she agreed with a "few defense motions . . . ." The prosecutor continued: "One is a motion to exclude opinion that the child is a victim of sexual molestation." No mention was made during the hearing about profile evidence. At trial, defendant did not object to the evidence he now asserts was profile evidence.

During Dr. Carmichael's testimony at trial, he answered the prosecutor's questions concerning how a child reacts to sexual abuse, such as delayed disclosure, a child's perception of the abuse, and incremental disclosure. Defendant now asserts that some of Dr. Carmichael's answers incorporated profile evidence.

The prosecutor asked Dr. Carmichael whether there are differences in the timing of a child's reporting of sexual abuse if the perpetrator is known to the child. Dr. Carmichael answered that the closer the relationship is the longer the delay in

16

reporting tends to be. As a follow-up, the prosecutor asked whether there were studies showing whether it is "more common to have a known entity versus a stranger committing these type of acts." Dr. Carmichael answered that it is three times more likely that the abuse is committed by someone with whom the child has "an ongoing relationship."

The prosecutor asked Dr. Carmichael about strategies perpetrators use to prevent a child from disclosing abuse. Dr. Carmichael answered that perpetrators work to gain the child's trust by spending time with the child and giving the child "special trinkets or things that the kid enjoys." The perpetrator may then integrate a sexual component into the relationship so that the child is less inclined to view the conduct as sexual in nature. To discourage the child from reporting, a perpetrator may threaten to take away special privileges.

Defendant forfeited review of whether the trial court improperly admitted profile evidence because, even if defense counsel included profile evidence in a pretrial motion, defense counsel did not obtain a ruling on that issue. The prosecutor's agreement not to introduce expert opinion about whether Annabelle was a victim of sexual molestation did not cover profile evidence, and defense counsel did not alert the trial court to the need to rule on admissibility of profile evidence. Failure to obtain a ruling on a motion to exclude evidence forfeits appellate review of the issue. (*People v. Morris* (1991) 53 Cal.3d 152, 195, disapproved on other grounds in *People v. Stansbury* (1995) 9 Cal.4th 824, 830, fn. 1.) Defense counsel also did not object during the trial.

Defendant asserts that, if defense counsel failed to preserve the issue for appellate review, defense counsel provided ineffective assistance of counsel. We conclude defense counsel's representation was not constitutionally deficient because the evidence was not inadmissible profile evidence. (See *Avena, supra,* 13 Cal.4th at p. 418 [standard for reviewing claim of ineffective assistance of counsel].)

17

"A profile ordinarily constitutes a set of circumstances -- some innocuous -- characteristic of certain crimes or criminals, said to comprise a typical pattern of behavior.  In profile testimony, the expert compares the behavior of the defendant to the pattern or profile and concludes the defendant fits the profile.  (See *People v. Robbie* (2001) 92 Cal.App.4th 1075, 1084; see also *People v. Smith* (2005) 35 Cal.4th 334, 357, 358.)"  (*People v. Prince* (2007) 40 Cal.4th 1179, 1226 (*Prince*).)

In *Prince*, the California Supreme Court concluded that the evidence complained of on appeal was not profile evidence, as follows:  "[The expert's] testimony did not evaluate defendant's behavior against a pattern or profile.  [The expert] did not offer an opinion that he believed defendant was the culprit, nor did he relate his findings to defendant at all.  Instead, he compared documentary evidence of the crime scenes in the present case and, based upon his observation of common marks and his experience, concluded the crimes had been committed by a single person.  In any event, profile evidence does not describe a category of always-excluded evidence; rather, the evidence ordinarily is inadmissible 'only if it is either irrelevant, lacks a foundation, or is more prejudicial than probative.' *(People v. Smith, supra,* 35 Cal.4th at p. 357.)  In sum, '[p]rofile evidence is objectionable when it is insufficiently probative because the conduct or matter that fits the profile is as consistent with innocence as guilt.' (*Id*. at p. 358.)"  (*Prince, supra,* 40 Cal.4th at p. 1226, italics omitted.)

Here, as in *Prince*, the expert did not evaluate defendant or his behavior, and he did not offer an opinion that he believed defendant committed the crimes.  The evidence was introduced to assist the jury in determining the victim's credibility due to common characteristics of child victims of sexual molestation, thus helping the jury to understand topics such as delayed disclosure.  In any event, defendant does not assert that what he now deems profile evidence was irrelevant, lacked a foundation, or was more prejudicial than probative.  (*Prince, supra,* 40 Cal.4th at p. 1226.)  Therefore, he has not established

18

that the evidence was objectionable, and he has not established ineffective assistance of counsel.

In addition, defendant argues defense counsel provided ineffective assistance of counsel by agreeing not to question his expert witness, Dr. O'Donohue, about whether the methods used to interview Annabelle were suggestive.

Before trial, defendant moved to allow Dr. O'Donohue, an expert in forensic interviewing and suggestiveness, "to testify about the unreliability of the methods used to conduct the interviews [of Annabelle]." In support of the motion, defendant attached a report by Dr. O'Donohue analyzing the interviews of Annabelle for suggestiveness. The prosecution moved to exclude Dr. O'Donohue's critique of the interviews of Annabelle. Defense counsel and the prosecutor resolved the admissibility issue with an agreement, as noted by the prosecutor at the pretrial hearing: "[W]e are in agreeance that [Dr. O'Donohue] can go through his studies, opinions on general subject matter, hypotheticals, but cannot discuss his review of the materials in this case and his conclusions based on those -- the review of this case."

At trial, Dr. O'Donohue testified extensively concerning suggestiveness in interviews with alleged victims of child molestation. He said that closed-ended questions lead to more false memories and false reports. Questions from authority figures, such as parents or police officers, may produce more suggested memories. Stereotyping of the accused by a parent or others may influence responses about whether the accused committed a bad act. Repetitive questioning and confirmation bias may lead the alleged victim to pick up on what the questioner wants to hear. Questioning may influence the person's memory, leading the person to believe things happened that did not happen. And leading questions may produce answers that are not true.

Dr. O'Donohue criticized specifically the 10-step forensic interview protocol used in Sacramento, focusing on deficiencies in the protocol. He also discussed studies

concerning suggestiveness and answered defense counsel's hypothetical questions crafted with the facts of this case.

Finally, during closing argument, defense counsel focused on Dr. O'Donohue's testimony to argue that the interviews and interactions of relatives and investigators were suggestive and led Annabelle to accuse defendant of acts that did not happen.

Defendant's argument on appeal hinges on the admissibility of asking an expert to give an opinion about whether specific methods used in interviews of an alleged victim of child molestation were suggestive and may have caused the child to relate acts that did not occur. Defendant has not established that his trial counsel's agreement not to ask such questions was deficient. This case is similar to *People v. Page* (1991) 2 Cal.App.4th 161, in which the Court of Appeal determined the expert's discussion of general principles about the accuracy of eyewitness testimony so thoroughly educated the jury that further testimony about specific application of those principles was unnecessary. "[A]n expert witness may so thoroughly educate a jury regarding applicable general principles that 'the factual issues in the case become ones that the jurors can answer as easily as the expert.' In other words, an expert's thorough description of the general principals to be applied in a given case may make additional (and more specific) expert testimony superfluous. [Citations.] In such a case, ' "[t]here is no necessity for [additional expert] evidence, and to receive it would tend to suggest that the judge and jury may shift responsibility for decision to the witness[]." ' [Citations.]" (*Page,* at pp. 188-189.)

Here, because defense counsel thoroughly questioned the defense expert about general principles and posed hypotheticals using the facts of this case on the issue of suggestiveness, the argument that defense counsel was constitutionally deficient for failing to ask the defense expert about specific application of those principles is unconvincing. Hence, defendant's ineffective-assistance-of-counsel argument fails.

20

## VI

Defendant claims the trial court prejudicially violated his federal due process rights by instructing that a violation of section 288.7, subdivision (b) [oral copulation or sexual penetration with a child who is 10 years of age or younger] is a general intent crime.

Counts one, two, thirteen, and sixteen charged defendant with violations of section 288.7, subdivision (b) because defendant's finger penetrated Annabelle's vagina. The jury found him guilty on those counts. In its instructions to the jury, the trial court gave conflicting instructions concerning the intent element of the crime. The trial court instructed the jury that sexual penetration as charged in those counts is a general intent crime. But it also instructed the jury that sexual penetration as charged in those counts "means penetration . . . for the purpose of sexual abuse, arousal, or gratification."

Sexual penetration with a child 10 years of age or younger in violation of section 288.7, subdivision (b) requires that specific intent of penetration "for the purpose of sexual arousal, gratification, or abuse." (*People v. Ngo* (2014) 225 Cal.App.4th 126, 157; *People v. ZarateCastillo* (2016) 244 Cal.App.4th 1161, 1167.) In *Ngo*, the trial court, as here, gave both a general intent instruction and the appropriate specific intent instruction. (*Ngo,* at p. 162.) The Court of Appeal wrote: "Thus, the trial court ultimately instructed the jury that it must find defendant committed the sexual penetration for the required purposes." (*Ibid*.) Under the same instructional circumstances, this court concluded in *ZarateCastillo* that the instructional error was harmless beyond a reasonable doubt because "there [was no] basis for believing that the jury could have, under any circumstances, rationally found that defendant penetrated the victim's vagina for any purpose other than sexual abuse, arousal, or gratification." (*ZarateCastillo,* at p. 1169; see *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705] [federal standard of prejudice].)

We conclude the error in instructing the jury in this case that violation of section 288.7, subdivision (b) is a general intent crime was harmless beyond a reasonable doubt because the jury could not have rationally concluded that defendant's finger penetrated Annabelle's vagina other than for sexual arousal, gratification, or abuse. Defendant's lone argument for finding the error prejudicial is that the family was physically affectionate. That argument is completely unpersuasive.

## VII

Defendant argues the cumulative prejudice of the asserted errors and ineffective assistance of counsel he claims occurred at trial requires reversal even if the asserted errors and incidents of ineffective assistance of counsel do not individually require reversal. (See *In re Reno* (2012) 55 Cal.4th 428, 483 [discussion of cumulative prejudice].)

We examined for prejudice only two of defendant's contentions about trial: the prosecutor's "were they lying" questions (part I) and the trial court's instruction to the jury that violation of section 288.7, subdivision (b) is a general intent crime (part VI). Our examination revealed no prejudice to defendant arising from each incident. As to the other contentions about the trial, we found no error or constitutionally deficient representation, eliminating a need to consider prejudice.

Defendant does not suggest any correlation between the prosecutor's "were they lying" questions and the trial court's general intent instruction that would lead one to believe the cumulative prejudice from those two circumstances violated defendant's fair trial rights. We also see no correlation or accumulation of prejudice justifying reversal.

## VIII

Defendant contends the sentence must be vacated and the matter remanded to the trial court for resentencing because the trial court did not state its reasons for imposing consecutive sentences and, in the alternative, defense counsel provided ineffective assistance of counsel by failing to object to the trial court's failure to state reasons.

22

When imposing consecutive rather than concurrent sentences, a trial court must state reasons for doing so. (§ 1170, subd. (c); Cal. Rules of Court, rule 4.406; *People v. Neal* (1993) 19 Cal.App.4th 1114, 1117.) But an appellate challenge to a failure to do so is forfeited by failing to object below. (*People v. Morales* (2008) 168 Cal.App.4th 1075, 1084.) Here, the trial court imposed consecutive terms, it did not state reasons for imposing consecutive terms, and defendant's trial counsel did not object.

Because of the failure to object, review of the trial court's failure to state reasons for imposing consecutive sentences is forfeited. Anticipating that conclusion, defendant argues defense counsel provided ineffective assistance of counsel by failing to object. He claims no satisfactory explanation exists for the failure.

We conclude defense counsel did not provide ineffective assistance of counsel because it is not reasonably probable defendant would have obtained a better result if defense counsel had objected. (*People v. Alvarado* (2001) 87 Cal.App.4th 178, 194; *Avena, supra,* 13 Cal.4th at p. 418.)

In considering consecutive terms, the trial court may consider whether (1) "[t]he crimes and their objectives were predominantly independent of each other; [¶] (2) [t]he crimes involved separate acts of violence or threats of violence; or [¶] (3) [t]he crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior." (Cal. Rules of Court, rule 4.425(a).) The court may consider other circumstances in aggravation or mitigation except those used to impose the upper term or enhance a sentence or that are elements of the crime. (Cal. Rules of Court, rule 4.425(b).)

The probation report recommended consecutive sentencing because "[t]he crimes were committed at different times or separate places, rather than being committed so close in time and place as to indicate a single period of aberrant behavior," citing rule 4.425(a)(3) of the California Rules of Court. Additionally, the probation report listed three aggravating circumstances and no mitigating circumstances. The listed aggravating

23

circumstances were: (1) "[t]he crimes involved acts disclosing a high degree of cruelty and callousness" (Cal. Rules of Court, rule 4.421(a)(1)), (2) "[t]he defendant took advantage of a position of trust to commit the offenses" (Cal. Rules of Court, rule 4.421(a)(11)), and (3) "[t]he defendant has engaged in violent conduct which indicates a serious danger to society" (Cal. Rules of Court, rule 4.421(b)(1)).

The trial court said that it had read and considered the report and "will be sentencing [defendant] accordingly." In imposing the upper term on count five, the trial court said that it relied on defendant's taking advantage of a position of trust. (Therefore, the other aggravating circumstances (high degree of cruelty and engaging in violent conduct indicating a serious danger to society), not having been used to impose the upper term, were available to support the consecutive sentencing, along with the finding that the crimes were committed at different times or separate places.

Defendant claims the trial court, on remand, may sentence concurrently in some instances because of findings that the offenses, when grouped together by location, were not committed on separate occasions or were committed for similar objectives. We disagree. The trial court expressly agreed with and relied on the probation report, which properly listed reasons to impose consecutive sentences. There is no indication in this record that, on remand, the trial court would sentence differently. Therefore, defendant's contention that defense counsel provided ineffective assistance of counsel by failing to object to the trial court's failure to state reasons for imposing consecutive sentences is without merit.

IX

Defendant asserts that even if we conclude his various claims of ineffective assistance of counsel concerned only harmless matters, defense counsel's deficiencies, considered cumulatively, were prejudicial.

In a paragraph in a death penalty case, the California Supreme Court appears to have considered the type of argument defendant now makes. The court wrote:

24

"Defendant also contends that the cumulative effect of counsel's errors and omissions amounted to ineffective assistance of counsel. We have stated throughout the guilt phase discussion, however, that counsel performed their task largely free of deficient performance, and certainly free of any lapse of constitutional dimension. We reject this claim as well." (*People v. Ochoa* (1998) 19 Cal.4th 353, 435 (*Ochoa*).)

Defendant makes the following argument concerning the cumulative effect of defense counsel's asserted deficiencies: "[Defendant] is not saying counsel's separate acts were separately harmless, but rather combined effect contributed to the adverse result. As a result of these errors, the jury did not hear important evidence about the way the authorities might have shaped Annabelle's account, but was also exposed by expert and lay opinion about the veracity of abuse victims, heard prejudicial information not subject to cross-examination, was put in an adversarial position in front of the jury, and denied the opportunity to have the court consider the factors supported concurrent rather than consecutive sentencing in this case. The combined impact of these omissions resulted in a 'breakdown in the adversary process that renders the result unreliable.' [(*Strickland v. Washington, supra,* 466 U.S. at p. 687 [80 L.Ed.2d at p. 693.)]"

As did the California Supreme Court in *Ochoa*, we find this contention unconvincing based on our prior discussion of the individual assertions of ineffective assistance of counsel. In all instances, the asserted ineffectiveness was either not deficient at all or represented conduct "free of any lapse of constitutional dimension." (*Ochoa, supra,* 19 Cal.4th at p. 435.)

X

Moreover, defendant claims the trial court erred by not staying the sentence on count twenty [misdemeanor annoying or molesting a child -- section 647.6, subd. (a)(1)] pursuant to section 654 because defendant told Annabelle to wear stretchy pants and no bra (the basis of the annoying and molesting conviction) to facilitate his commission of the other acts for which he was convicted.

25

Section 654, subdivision (a) provides in pertinent part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." This statute "prohibits punishment for two crimes arising from a single, indivisible course of conduct. [Citation.]" (*People v. Islas* (2012) 210 Cal.App.4th 116, 129.) "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor." (*Neal v. State of California* (1960) 55 Cal.2d 11, 19, disapproved on another ground in *People v. Correa* (2012) 54 Cal.4th 331, 334.) The question whether a defendant harbored a separate intent and objective for each offense is a factual determination for the trial court, and its conclusion will be sustained on appeal if supported by substantial evidence. (*People v. Osband* (1996) 13 Cal.4th 622, 730 (*Osband*).)

Defendant makes an unspecific assertion that requesting Annabelle to wear stretchy pants and no bra facilitated commission of the "charged lewd acts" because it made it "easier for him to kiss her breast and buttocks." But proper application of section 654 is based on facts as found by the trial court (*Osband, supra,* 13 Cal.4th at p. 730), and thus defendant must explain to us factually how the request to Annabelle to wear stretchy pants and no bra facilitated a specific act for which defendant was convicted. Here he has made no effort to specify what acts or counts were facilitated by his request to Annabelle to wear stretchy pants and no bra, and he does not identify for us any specific offense committed while Annabelle was wearing stretchy pants and no bra. Because he has not met his burden on appeal, his contention lacks merit.

XI

Finally, defendant contends the abstract of judgment should be corrected to reflect the trial court's oral pronouncement of a $2,000 restitution fine and accompanying

$2,000 parole revocation fine rather than the $10,000 fines listed on the abstract of judgment.  Respondent agrees, as do we.

At sentencing, the trial court imposed a restitution fine under section 1202.4, subdivision (b) of $2,000.  By statute, that includes a parole revocation fine in the same amount under section 1202.45  However, the abstract of judgment reflects $10,000 restitution and parole revocation fines instead of $2,000 fines.  We will therefore direct the trial court to correct the abstract of judgment.  (See *People v. Mitchell* (2001) 26 Cal.4th 181, 185 [trial court ordered to correct abstract of judgment to conform to judgment].)

## DISPOSITION

The judgment is affirmed.  The trial court is directed to correct the abstract of judgment to reflect the orally imposed $2,000 restitution fine and $2,000 parole revocation fine.  The trial court is further directed to send a certified copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.

_____/S/_____

MAURO, J.

We concur:

_____/S/_____

BLEASE, Acting P. J.

_____/S/_____

ROBIE, J.

27